IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEVIN CLANTON, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )   Civil No. 15-124-NJR-RJD |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|       Defendant. | ) |

### MEMORANDUM ON STANDARD OF CARE AND CAUSATION

The defendant, United States of America, by its attorneys, Donald S. Boyce, United States Attorney for the Southern District of Illinois, and Laura J. Jones, Assistant United States Attorney, submits this memorandum regarding standard of care and causation issues raised during trial, in accordance with the Court's suggestions on pages 809, 812, and 813 of the transcript that the government file a brief. *See*, *e.g.*, Tr. pp. 808-13; *see also* Tr. 134-136, 224-227, 245-246, 255-256, 259, 318-319, 1074, 1127, 1182, 1184, 1185, and 1203 (standard of care); and 240-241 and 1114-1115 (causation).

**A.**     **A Practitioner's Standard of Care and Causation are Separate Issues and Require Separate Findings and Conclusions by the Court.**

A review of the transcript shows that it may appear that the issues of standard of care and causation are combined.[1] Standard of care "is one element" that a plaintiff must show in a medical

---

[1] In dialogue with the parties' attorneys, the Court mentioned that some issues had come up several times. The Court stated that government counsel had objected to Dr. Yablonsky (an internist) and then again to Dr. Tolins's (a nephrologist) testifying about the standard of care of Nurse Practitioner (NP) Denise Jordan, who treated plaintiff Kevin Clanton. The Court stated that while Dr. Yablonsky, although he did talk about NP Jordan's care and how it violated the standard of care, the Court took that, as well as Dr. Tolins's testimony, to be talking about causation and how causation is one of the elements of a medical malpractice claim. The Court continued that the witness talked about that and leads into causation.

malpractice case. *Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009). With a failure of proof on one element, a plaintiff cannot prevail. *Id*. Causation is a "distinct and also critical issue." *See Gipson v. United States*, 631 F.3d 448, 452 (7th Cir. 2011). The two issues are not combined.

---

The Court found that under Rule 702, the testimony from both physicians (Dr. Yablonsky and Dr. Tolins) was helpful in that both talked about nurse practitioners and their interactions with physicians. The Court continued that it just heard Dr. Swirsky and even though government counsel objected to a physician talking at all about the standard of care for a nurse practitioner, government counsel objected. Tr. 810. The Court did not think that there was anything improper in Dr. Yablonsky and Dr. Tolins's testimony because that was not the sole purpose of their testimony. But the Court did not understand why government counsel allowed Dr. Swirksy to talk about it. Government counsel stated that if Dr. Tolins could testify to it (in plaintiff's case-in-chief), then she would think Dr. Swirsky (in the government's case-in-chief) would be able to testify to it also.

The Court then asked plaintiff's counsel if she was right that the purpose of Dr. Tolins's testimony was causation. Tr. 810. Plaintiff's attorney agreed and stated that as his experts provide primary care, they know what appropriate care and treatment is. Tr. 811. "So it's part of causation, in order to try to help the court understand, in addition to talking about how you collaborate with the nurse, et cetera. When they're explaining their causation opinions, they have to get the Court to understand, here's why it matters, because this is what appropriate care would have looked like." Tr. 811.

Plaintiff's attorney conceded that "I think that's walking the line, probably, a bit, but it's not a standard of care opinion because they're not authorized to give it." Tr. 812. Plaintiff's attorney continued that's why plaintiff's experts, when they talked about causation, explained what appropriate care would look like because they want you to understand why we think it would have made a difference.

The Court stated that it did not see that if they didn't have a nurse practitioner to testify to the standard of care, the Court could see that as a problem. The Court stated that it did not see that was the purpose of Dr. Yablonsky or Dr. Tolins, that they mentioned about what is appropriate care. It just related to why the care wasn't appropriate and why that caused damage in their opinion.

The Court stated the government could file a brief if it wanted to and explain why the Court was wrong—it did not see that Drs. Yablonsky and Tolins were talking about the standard of care. Tr. 813.

Contrary to what plaintiff's attorney indicates, discussing issues regarding what a nurse practitioner should do or what NP Jordan should have done do not relate to causation. The government has no objection if plaintiff files a brief on these issues, as well.

2

To succeed on a medical malpractice claim under Illinois law, plaintiff must prove: (1) the proper standard of care by which a physician's conduct (or nurse practitioner's conduct) in this case) may be measured, (2) a negligent failure to comply with the applicable standard, and (3) a resulting injury proximately caused by the physician's (or practitioner's) lack of skill or care. *Walsh,* 583 F.3d at 995 (quotation omitted); *see also Wipf v. Kowalski,* 519 F.3d 380, 384 (7th Cir. 2008). Unless the physician's (practitioner's) negligence is so grossly apparent or the treatment so common as to be within the everyday knowledge of a layperson, expert testimony is required to establish the standard of care and the defendant's deviation from that standard. *Massey v. United States,* 312 F.3d 272, 280 (7th Cir. 2002); *see also Wipf,* 519 F.3d at 384.

Under Illinois law, a physician (or practitioner) breaches the standard of care if s/he fails to use reasonable skill such as physicians (or practitioners) in good practice ordinarily use and would bring to a similar case. *Cummings v. Jha,* 394 Ill.App.3d 439, 452 (5th Dist. 2009). The determination of whether a doctor (or practitioner) acted in compliance "with the applicable standard of care is limited, by definition, to the circumstances with which he was confronted at the time the medical service was rendered." *Steele v. Provena Hospital,* 2013 IL App (3d) 110374, ¶ 61 (Sept. 24, 2013).

**B. This Court has Already Acknowledged that a Nurse Practitioner is Limited by Her Scope of Practice Based on Education and Training.**

In a case rendered shortly before trial, this Court held that a nurse practitioner cannot "assume" the duties of a physician because she is "necessarily limited by her scope of practice based on her education and training." *Holtz v. Coe*, No. 14-CV-367-NJR-DGW, 2016 WL 5369464, at *10 (S.D. Ill. Sept. 26, 2016). The Court also found that "it would be improper, and possibly leave [the nurse practitioner] vulnerable to claims of malpractice, if she 'assumed' the role of a physician and expanded her scope of practice because she, rather than a physician, was

3

made to examine [a patient], whatever the reason." *Id*. Thus, the Court acknowledges the difference in the standard of care applicable to a nurse practitioner as opposed to a physician.

C. **As Stated in its Proposed Findings of Facts and Conclusions of Law, the Standard of Care of a Nurse Practitioner is Established by the Testimony of a Duly Qualified Nurse Practitioner Expert.**

The Illinois Supreme Court has held that to offer expert opinion testimony on the standard of care in a given school of medicine, an expert must be licensed in that school. *Sullivan v. Edward Hosp.*, 209 Ill.2d 100, 119 (2004); *Dolan v. Galluzzo*, 77 Ill. 2d 279, 285 (1979); *see Smith v. Pavlovich*, 394 Ill. App. 3d 458, 462 (5th Dist. 2009). A doctor is not competent to provide nursing standard of care testimony because nursing is a unique school of medicine that requires a separate license. *Sullivan,* 209 Ill.2d at 123–24 (plaintiff offered the expert testimony of a board-certified physician specializing in internal medicine to prove the standard of care applicable to nurses). *See Smith*, 394 Ill. App. 3d at 462 (citing *Sullivan*, 209 Ill. 2d at 111-23) (doctor not qualified to offer expert opinion testimony on standard of care applicable to nurse practitioner).

Even if the plaintiff argues that where the defendant was essentially acting as a physician or specialist and not as a nurse, the nurse should not be subject to the standard of care of the physician or specialist. *Smith*, 394 Ill. App. 3d at 464 (nurse subject to standard of care of a nurse, not pediatrician, even if those nurses are working in pediatrics). Merely because plaintiff's physicians fail to use the words "standard of care" does not mean they are failing to testify to the standard of care of a nurse practitioner. Therefore, any testimony by anyone other than an expert nurse practitioner should be disregarded by this Court if it involves the standard of care of NP Jordan or any nurse practitioner.

D. **Proximate Cause Must be Established to a Reasonable Degree of Medical Certainty.**

Under Illinois law, "'[p]roximate cause' in a medical malpractice case must be established by expert testimony to a reasonable degree of medical certainty, and the causal connection must

4

not be contingent, speculative, or merely possible." *Morisch v. United States,* 653 F.3d 522, 531 (7th Cir. 2011) (quoting *Johnson v. Loyola Univ. Med. Ctr.,* 384 Ill. App. 3d 115, 123 (1st Dist. 2008) (quotation omitted)). To establish proximate cause in a medical malpractice case, "a plaintiff must satisfy two requirements: cause in fact and legal cause." *LaSalle Bank, N.A. v. C/HCA Devel. Corp.,* 384 Ill. App. 3d 806, 828 (1st Dist. 2008).

To show cause in fact, a plaintiff must prove, within a reasonable degree of medical certainty, that the defendant's breach was more probably than not a proximate cause of the resulting injury. *Id.* The defendant's conduct must be a material element and a substantial factor in bringing about the injury. *Palay v. United States*, 349 F.3d 418, 432 (7th Cir. 2003) (quotes omitted). "[T]o prove legal cause, a plaintiff must also show that 'an injury was foreseeable as the type of harm that a reasonable person would expect to see as a likely result of his or her conduct.'" *LaSalle Bank*, 348 Ill. App. 3d at 828 (quoting *Bergman v. Kelsey,* 375 Ill.App.3d 612, 625 (1st Dist. 2007)).

### E. Causation Testimony is Limited by Testimony that Meets the Requirements of Rules 702 and 703.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993). *See Lewis v. Citgo Petroleum Corp.,* 561 F.3d 698, 705 (7th Cir. 2009).[2] The District Court functions as a "gatekeeper" with respect to testimony proffered under Rule 702 to ensure that the testimony is sufficiently reliable and relevant before accepting a witness as an expert. *Mihailovich v. Laatsch,* 359 F.3d 892, 918 (7th Cir. 2004) (citing *Kumho Tire Co., Ltd. v. Carmichael,* 526

---

[2] With regard to a Rule 702 inquiry in a bench trial, the Court does not err in admitting evidence subject to the ability later to exclude it or disregard it if the testimony fails to meet the standard of reliability established by Rule 702. *In re: Salem*, 465 F.3d 767, 777 (7th Cir. 2006).

U.S. 137, 147 (1999)). "[I]t is not enough that the proposed testimony comes from a qualified physician." *Lewis*, 561 F.2d at 705.

Under Rule 702, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702; *see Ortiz v. City of Chicago,* 656 F.3d 523, 536 (7th Cir. 2011); *Myers v. Ill. Cent. R.R. Co.,* 629 F.3d 639, 644 (7th Cir. 2010).

The proponent of the expert bears the burden of demonstrating that the expert's testimony satisfies *Daubert*. *Lewis*, 561 F.3d at 705. "The goal of *Daubert* is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the relevant field." *Jenkins v. Bartlett,* 487 F.3d 482, 489 (7th Cir. 2007) (quoting *Kumho Tire Co.,* 526 U.S. at 152). "Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." *Walker v. Soo Line R.R. Co.,* 208 F.3d 581, 591 (7th Cir. 2000).

Nothing in the testimony suggests that Dr. Yablonsky, an internist, has the requisite "knowledge, skill, experience, training, or education" to offer expert opinions on causation.[3] "[S]imply because a doctor has a medical degree does not make him qualified to opine on all medical subjects." *See Gayton v. McCoy,* 593 F.3d 610, 617 (7th Cir. 2010); s*ee Higgins v. Koch*

---

[3] Dr. Yablonsky did not testify he was involved in decisions of renal failure, dialysis, transplants, life care plans, or costs of future medical care of transplant patients, or any of the sort.

6

*Devel. Corp.,* 794 F.3d 697, 704 (7th Cir. 2015) (citation and internal quotation omitted) ("although a doctor may have 'experience diagnosing and treating'" a condition "'that does not make him qualified to assess its genesis'"); *Nolan v. United States*, No. 12 C 0247, 2015 WL 5159888, at *9 (N.D. Ill. Sept. 1, 2015).

A Court must take care to verify that an expert is qualified to offer opinion testimony in the specific area of his proposed testimony. *See McWilliams v. Dettore*, 387 Ill. App. 3d 833, 843 (1st Dist. 2009). In assessing reliability, the Court's focus must be solely on principles and methodology, not on the conclusion they generate. *Daubert*, 509 U.S. at 595. The Court's analysis of whether the expert is qualified to testify to the alleged breach and ultimate causation involves the determination of comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony. *Gayton*, 593 F.3d at 616 (internal quotes and citation omitted) (his qualifications must provide a foundation to answer a specific question). The judge must ensure that all expert testimony is not only relevant, but reliable. *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013) (quotes omitted). The expert who provides only the bottom line supplies nothing of value. *Windler & Ezra, P.C. v. Am. Int'l Group, Inc*., 521 F.3d 790, 791 (7th Cir. 2008) (quotes omitted).

Under these circumstances, Dr. Yablonsky's conclusions regarding causation and renal-related opinions (halting the progression of CKD, avoiding ESRD, avoiding hemodialysis, post-December 22, 2012 medical treatment, future medical treatment, future dialysis and transplants, life care plan opinions, and future medical bills, etc.) are not well-grounded in methods and procedures of science. *O'Connor v. Commonw. Edison Co.,* 13 F.3d 1090, 1107 (7th Cir. 1994) (quotes omitted) (holding that a physician who relied only on personal observation without any personal study or experiment to justify his conclusions did not meet the *Daubert* standard).

7

Several cases have indicated that it is a nephrologist, not an internist, who may offer causation opinions on renal disease issues. *See Porter v. Whitehall Laboratories, Inc.*, 791 F.Supp. 1335, 1341, 1343, 1344 (S.D. Ind. 1992), *aff'd*, 9 F.3d 607 (7th Cir. 1993) ("etiology of [the patient's] renal failure is dependent upon complex medical interactions that are understood . . . only by specialists in the field of nephrology"; "if a nephrologist or renal pathologist would reasonably determine the fact of causation from the medical facts known about [the patient], then Rule 703 is satisfied"; "[t]o determine whether the particular facts or data known about the instant case are of a type reasonably relied upon by experts, the Court must consider the methods reasonable medical experts in nephrology or renal pathology would use to arrive at etiological conclusions"; Court noting that a physician who is an internist admitted that her opinion regarding causation of renal failure was merely a curbside observation and was not an admissible expert opinion); *Porter v. Whitehall Laboratories, Inc.*, 9 F.3d 607, 611, 614 (7th Cir. 1993) (Court also noting that one of plaintiff's experts in the previous renal failure case was not a nephrologist and admitted that her view was merely a curbside observation and concluding her testimony did not meet *Daubert* standards); *Nolan*, 2015 WL 5159888, at *4 (expert that at one time made statements regarding causation is not a nephrologist); *Henderson v. Ghosh*, No. 10-cv-6836, 2016 WL 1407024, at *1-*2 (N.D. Ill. April 11, 2016) (whether a patient's lab results indicated he would likely need dialysis is "a decision that would ultimately have to be made by a nephrologist" and also noting expert testimony that a referral to a nephrologist would have been when creatinine reached 2.7); *Harper v. Bolton*, 57 F. Supp. 3d 889, 897 n.11 (N.D. Ill. 2014) ("had counsel been

8

recruited during the discovery phase, counsel could have . . . deposed the hospital nephrologist regarding [the patient's] medical condition and the proper treatment for kidney disease").[4]

To summarize, Dr. Yablonsky is unable to give opinion testimony that includes causation and any nephrology-related opinions, specifically plaintiff's renal failure, halting progressive CKD, avoiding ESRD, avoiding hemodialysis, post-December 22, 2012 medical treatment, future dialysis and transplants, plaintiff's life care plan, future medical bills, etc.

                                UNITED STATES OF AMERICA

                                DONALD S. BOYCE
                                United States Attorney

                                **/s/ *Laura J. Jones***
                                LAURA J. JONES
                                Assistant United States Attorney
                                United States Attorney's Office
                                9 Executive Drive
                                Fairview Heights, IL  62208
                                Phone:   618-628-3700
                                Fax:        618-622-3810
                                E-mail:  Laura.Jones@usdoj.gov

---

[4] Of course, a nurse cannot testify as to causation. *See Seef v. Ingalls Mem. Hosp.,* 311 Ill.App.3d 7, 21 (1999) (a nurse cannot testify regarding proximate cause since she is not a medical expert); *Johnson v. United States*, 65 F.Supp.3d 595,  n.12 (N.D. Ill. 2014).  A nurse cannot testify to the standard of care for a physician. *Id.*

**Certificate of Service**

I hereby certify that on December 8, 2016. a true and correct copy of the foregoing document and the notice of electronic filing were sent by United States mail to the following participants:

Stephen J. Telken; stelken@schoenwalton.com
Troy E. Walton; twalton@waltontelken.com
Michael B. Marker; mmarker@waltontelken.com

UNITED STATES OF AMERICA

DONALD S. BOYCE
United States Attorney


/s/ *Laura J. Jones*
LAURA J. JONES
Assistant United States Attorney
United States Attorney's Office
Nine Executive Drive
Fairview Heights, IL  62208
Phone: (618) 628-3700
FAX: (618) 622-3810
E-mail: Laura.Jones@usdoj.gov